FILED

MAY 22 2014

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE COLEMAN

| UNITED STATES OF AMERICA | ) | No. 14 CR 294 |
| --- | --- | --- |
| v. | ) ) | Violations: Title 18, United States Code, Section 1343, and Title 26, United States Code, Section 7201 |
| VIET NGUYEN, and ADELINA MIGUEL | ) ) ) | |

COUNT ONE          MAGISTRATE JUDGE ROWLAND

The UNITED STATES ATTORNEY charges:

1. At times material to this Information:

    a. Defendant VIET NGUYEN owned and operated various companies, including Expedite Media Group, Inc., VB Management Holding Company, Inc., and Pure Small Business, Inc. Those companies provided internet marketing and internet technology services, including website development and mass marketing through e-mails. NGUYEN was the President of those companies, and directed their activities.

    b. Defendant ADELINA MIGUEL was the office manager and bookkeeper for those companies. She managed the payroll, handled credit card charges, issued tax forms to employees, and was responsible for general bookkeeping duties.

    c. The companies accepted payments made by credit cards, debit cards, and direct withdrawals from bank accounts. The companies entered into contracts with customers concerning the specific cost of the services being provided by the companies.

2. Beginning in or about early 2008 and continuing until in or about March

1

2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

VIET NGUYEN and<br>ADELINA MIGUEL,

defendants herein, devised, intended to devise, and participated in a scheme to defraud customers, credit card companies, and banks, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

3. It was part of the scheme that defendants NGUYEN and MIGUEL fraudulently charged, and caused others to fraudulently charge, customers' credit cards, debit cards, and bank accounts for services that were not provided to the customers, which fraudulent charges totaled at least approximately $1,200,000.

4. It was further part of the scheme that defendant NGUYEN directed defendant MIGUEL and other staff to make fraudulent charges for services not provided, in order to meet the daily sales quotas that defendant NGUYEN set for the companies. The defendants knew that the daily sales quotas ordinarily could not be met without fraudulently charging customers' credit cards, debit cards, and bank accounts. Based on NGUYEN's directions, MIGUEL routinely charged credit cards, debit cards, and bank accounts to fraudulently charge for services that were not provided.

5. It was further part of the scheme that defendants NGUYEN and MIGUEL falsely represented, and caused others to falsely represent, to customers that the customers' credit cards, debit cards, and bank accounts would be charged specific

amounts for specific services, as set forth in contracts, when, in fact, the defendants knew that the customers would be and were charged for services not provided.

6. It was further part of the scheme that defendants NGUYEN and MIGUEL fraudulently charged, and caused other to fraudulently charge, customers for non-existent services, even after customers had closed their accounts.

7. It was further part of the scheme that defendants NGUYEN and MIGUEL falsely represented, and caused others to falsely represent, to customers, credit card companies, and banks that the fraudulent charges were legitimate, even though the defendants knew that the charges were not legitimate.

8. It was further part of the scheme that defendants NGUYEN and MIGUEL intentionally failed to keep records concerning which charges were fraudulent, and therefore the defendants could not accurately identify which customers had been overcharged, or the amount of the fraudulent charges.

9. It was further part of the scheme that defendant NGUYEN opened new companies so that he could fraudulently obtain new merchant accounts. There were so many customer complaints about fraudulent credit card charges that NGUYEN's merchant accounts were frequently cancelled, and NGUYEN incorporated new companies to get around that problem. NGUYEN did not disclose to the issuing credit card companies and banks that the new companies were essentially the same companies whose merchant accounts had been cancelled.

10. It was further part of the scheme that the defendants misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

11. As a result of this scheme, the defendants caused fraudulent charges to be made to customers' credit cards, debit cards, and bank accounts totaling at least approximately $1,200,000.

12. On or about October 5, 2010, at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

VIET NGUYEN and
ADELINA MIGUEL,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted in interstate commerce, from Illinois to Delaware, by means of wire communication, certain writings, signs, and signals, namely: a credit card charge in the amount of approximately $2887, for services not provided, which was charged to the credit card of customer Ke.Ta., and was sent electronically from Expedite Media Group, Inc., in Aurora, Illinois, to Chase Bank, in Wilmington, Delaware, for payment;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The UNITED STATES ATTORNEY further charges:

1. Paragraph 1 of Count One of this Information is incorporated here.

2. At times material to this Information:

    a. Expedite Media Group, Inc., VB Management Holding Company, Inc., and Pure Small Business, Inc., were each Subchapter S corporations and therefore required to file U.S. Corporate Income Tax Returns for an S Corporation (Forms 1120S, with schedules and attachments) with the Internal Revenue Service.

    b. Defendant NGUYEN was the sole shareholder of those corporations. The net business income or loss of the Subchapter S corporations flowed through to NGUYEN and had to be reported on NGUYEN's U.S. Individual Income Tax returns (Form 1040).

    c. Defendants NGUYEN and MIGUEL had primary responsibility for providing documents and information to the tax preparers who prepared the corporate returns for the corporations. NGUYEN and MIGUEL also had primary responsibility and authority for withholding and paying payroll taxes.

    d. Based on their individual incomes, defendants NGUYEN and MIGUEL were each required by law to file U.S. Individual Income Tax Returns (Forms 1040) with the IRS, and to pay the income tax due and owing.

e. <u>False Corporate Tax Returns</u>: During calendar years 2008, 2009, and 2010, defendants NGUYEN and MIGUEL caused the corporations to pay personal expenses on behalf of NGUYEN, which included car payments for a Rolls Royce, Bentley, Hummer, Ferrari, Land Rover, Audi S8, Audi S6, and other cars, as well as mortgage payments, cash withdrawals, credit card charges, skating lessons, dentist bills, utility expenses, and property taxes.

f. For calendar years 2008, 2009 and 2010, defendants NGUYEN and MIGUEL also caused the corporations to pay personal expenses on behalf of MIGUEL, which included mortgage payments and car loan payments.

g. Defendant NGUYEN directed defendant MIGUEL to enter those payments for personal expenses as business expenses in the corporations' general ledgers, in order to conceal the nature of those expenditures, and to allow NGUYEN and MIGUEL to avoid reporting those payments as personal income on their tax returns. MIGUEL entered those payments as business expenses, and classified the expenses as advertising expenses, refunds, seminars, internet services, and other business expenses. Those payments were not entered into the corporations' general ledgers as personal expenses. NGUYEN and MIGUEL did not issue or receive W-2 tax forms showing the payments as income to them, although they each knew that the payments constituted income.

h.  Defendants NGUYEN and MIGUEL caused Expedite Media Group, Inc. to file false U.S. Income Tax Forms for an S Corporation (Form 1120S) for calendar years 2008, 2009, and 2010, and caused VB Management Holding Company, Inc. to file a false Form 1120S for calendar year 2010. NGUYEN and MIGUEL caused those corporations to fraudulently deduct as business expenses the personal payments that the corporations had made for NGUYEN and MIGUEL, thereby understating those corporations' income. NGUYEN and MIGUEL provided false information to the tax preparers who prepared those returns. NGUYEN signed the corporate tax returns, which contained false information, and caused them to be filed with the IRS.

i.  <u>Defendant NGUYEN's False Personal Tax Returns:</u> For calendar years 2008 and 2009, defendant NGUYEN filed U.S. Individual Income Tax Returns (Form 1040) in which he intentionally falsely understated his total income, in that he failed to include payments made by the corporations for his personal expenses, and he understated the flow-through income from the corporations. NGUYEN failed to report income totaling approximately $562,362 in 2008, and approximately $1,101,490 in 2009, which resulted in NGUYEN owing additional income taxes of approximately $194,953 for 2008, and approximately $376,824 for 2009.

j.  <u>Defendant NGUYEN's Failure to File:</u> For calendar year 2010, defendant NGUYEN willfully failed to file a U.S. Individual Tax Return (Form 1040), even though NGUYEN knew that he was required by law to do so. NGUYEN failed to

report income totaling approximately $750,669 for 2010, which resulted in NGUYEN's owing additional income taxes of approximately $244,616.

  k. <u>Defendant MIGUEL's False Personal Tax Returns.</u> For calendar years 2008, 2009, and 2010, defendant MIGUEL filed U.S. Individual Income Tax Returns (Form 1040), in which she intentionally falsely understated her total income on line 22 of her tax return, in that she failed to report the personal expenses paid by the corporations, and she understated her wages. MIGUEL failed to report income totaling approximately $41,770 for 2008, approximately $55,812 for 2009, and approximately $21,621 for 2010 (totaling approximately $119,203), which resulted in MIGUEL's owing additional income taxes of approximately $8,253 for 2008, approximately $9,851 for 2009, and approximately $3,471 for 2010 (totaling approximately $21,575).

  l. On Line 7 of the 2008, 2009, and 2010 returns, defendant MIGUEL substantially understated the amount of wages that she received.

  m. For calendar years 2008, 2009, and 2010, the defendants caused the corporations to issue false W-2 tax forms to defendant MIGUEL, understating her salary and omitting the personal expenses paid by the company.

  n. <u>False Payroll Tax Returns.</u> For calendar years 2008, 2009, and 2010, defendants NGUYEN and MIGUEL caused the corporations to prepare and file false payroll tax returns. NGUYEN and MIGUEL did not report or pay all of the federal withholding taxes, Social Security taxes, and Medicare taxes that the corporations

deducted and collected from the employees' wages, and they did not pay the corporations' share of the taxes owed to Social Security and Medicare.

   o. Although the corporations deducted and collected federal income taxes, Social Security taxes, and Medicare taxes from employees' wages, defendants NGUYEN and MIGUEL prevented the corporations from paying those monies to the federal government as required. At the end of each calendar quarter, NGUYEN and MIGUEL caused the corporations to file false payroll tax returns (U.S. Employer's Quarterly Federal Tax Returns, Forms 941), fraudulently underreporting employees' wages, and underreporting and underpaying the employees' federal income taxes, Social Security taxes, and Medicare taxes.

   p. The defendants failed to report wages and other compensation totaling approximately $623,297 for 2008, approximately $1,042,536 for 2009, and approximately $504,266 for 2010 (totaling approximately $2,170,099), which resulted in a tax loss of approximately $251,189 for 2008, approximately $279,712 for 2009, and approximately $203,219 for 2010 (totaling approximately $734,120).

   q. For calendar years 2008-2010, the defendants issued false W-2 tax forms to dozens of employees, understating the employees' wages, because the corporations had filed false payroll tax returns. The defendants issued false W-2 tax forms with the expectation that employees would file false tax returns understating their income. Defendant MIGUEL sent copies of the fake W-2s to the Social Security Administration.

r.     When employees complained or asked about the understated amount of income included in the W-2 tax forms, defendant NGUYEN directed those employees to use the false W-2 tax forms to file their personal tax returns.

s.     Defendants NGUYEN and MIGUEL caused certain legitimate payroll entries to be deleted in order to conceal the amount paid to employees.

t.     Defendant NGUYEN directed defendant MIGUEL to delete legitimate payroll expenses, and to fraudulently record those payments as other types of business expenses, such as advertising and internet expenses, which MIGUEL did. The corporations deducted those payroll expenses as other types of business expenses.

u.     For calendar years 2008, 2009, and 2010, defendants NGUYEN and MIGUEL caused a total tax loss of approximately $1,572,088.

3.     From on or about January 1, 2009 through on or about January 31, 2011, in the Northern District of Illinois, Eastern Division,

VIET NGUYEN,

defendant herein, did willfully attempt to evade and defeat the payment of income tax due and owing by defendant NGUYEN to the United States in the amount of approximately $376,824 for calendar year 2009, by committing the following affirmative acts among others:

## Affirmative Acts

a. <u>False Corporate Tax Return for 2009.</u> During calendar year 2009, defendant NGUYEN caused Expedite Media Group, Inc. to pay personal expenses on behalf of NGUYEN, which included car payments, mortgage payments, cash withdrawals, credit card charges, dentist bills, utility expenses, and property taxes.

b. Defendant NGUYEN caused the payments for personal expenses to be entered as business expenses in the corporations' general ledgers, in order to conceal the nature of those expenditures, and to allow NGUYEN to avoid reporting them as income on his personal tax returns. NGUYEN caused those payments to be booked as business expenses, including advertising expenses, refunds, seminars, internet services, and other types of business expenses. Those payments were not entered into the corporations' general ledgers as personal expenses.

c. Defendant NGUYEN caused Expedite Media Group, Inc. to file a false U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for calendar year 2009, and to fraudulently deduct as business expenses the payments that Expedite Media Group, Inc. had made for NGUYEN, thereby understating the corporation's income on the corporate return and the amount of income that flowed through to NGUYEN's individual return. NGUYEN signed that corporate tax return, which contained false information, and caused the return to be filed with the IRS.

d. Defendant NGUYEN provided false information to the tax preparers

who prepared the corporate tax return, thereby causing Expedite Media Group, Inc. to file a false corporate tax return.

      e.    <u>False Payroll Tax Returns.</u>  Defendant NGUYEN caused the corporations to prepare and file false payroll tax returns. NGUYEN did not report or pay all of the federal withholding taxes, Social Security taxes, and Medicare taxes that the corporations deducted and collected from the employees' wages, and did not pay the corporations' share of the taxes owed to Social Security and Medicare.

      f.    <u>False Personal Tax Return</u>.  For calendar year 2009, defendant NGUYEN filed a U.S. Individual Income Tax Return (Form 1040), in which he knowingly and willfully made material false statements, including the following:

      (i)    On Line 22 of the 2009 return, defendant NGUYEN substantially understated his total income by failing to report income totaling approximately $1,101,490, which resulted in his owing additional income taxes of approximately $376,824.

      (ii)    On Line 7 of the 2009 return, defendant NGUYEN substantially understated the amount of wages he received from the corporations in calendar year 2009, in that he failed to report approximately $150,000 of wages.

      (iii)    On Line 17 of the 2009 return, defendant NGUYEN substantially understated the S Corporation flow-through income from the corporations, namely, approximately $951,490 of flow-through income.

      g.      Defendant NGUYEN prevented the corporations from issuing W-2 tax forms to him, so that he could avoid reporting any wages and pay a lower amount of income taxes to the IRS, which he did.

      h.      Defendant NGUYEN caused the corporations to issue false K-1 tax forms to him, understating the flow-through income, so that he could pay a lower amount of taxes, which he did.

      i.      Defendant NGUYEN provided false information to the tax preparers who prepared his personal tax return.

In violation of Title 26, United States Code, Section 7201.

## COUNT THREE

The UNITED STATES ATTORNEY further charges:

1. Paragraphs 1 and 2 of Count Two of this Information are incorporated here.

2. From on or about January 1, 2009 through on or about April 15, 2010, in the Northern District of Illinois, Eastern Division,

ADELINA MIGUEL,

defendant herein, did willfully attempt to evade and defeat the payment of income tax due and owing by defendant MIGUEL to the United States in the amount of approximately $9,851 for calendar year 2009, by committing the following affirmative acts among others:

Affirmative Acts

a. False Corporate Tax Return. During calendar year 2009, defendant MIGUEL caused the corporations to pay personal expenses on behalf of defendant NGUYEN.

b. For calendar year 2009, defendant MIGUEL also caused the corporations to pay personal expenses on her behalf, which included mortgage payments and car loan payments.

c. Defendant MIGUEL entered those payments for personal expenses as business expenses in the corporations' general ledgers, in order to conceal the nature of those expenditures, and to allow MIGUEL to avoid reporting them as income on her

personal tax returns. MIGUEL classified those payments as advertising expenses, refunds, seminars, internet services, and other business expenses. Those payments were not entered into the corporations' general ledgers as personal expenses. MIGUEL did not issue or receive W-2 tax forms showing those payments as income, although she knew that it was income.

        d.     Defendant MIGUEL caused Expedite Media Group, Inc. to file a false U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for calendar year 2009, and caused Expedite Media to fraudulently deduct as business expenses the personal payments that the corporation had made for defendants NGUYEN and MIGUEL.

        e.     Defendant MIGUEL provided false information to the tax preparers who prepared the corporate tax return, thereby causing Expedite Media Group, Inc. to file a false corporate tax return.

        f.     <u>False Payroll Tax Returns.</u> Defendant MIGUEL caused the corporations to prepare and file false payroll tax returns. MIGUEL did not report or pay all of the federal withholding taxes, Social Security taxes, and Medicare taxes that the corporations deducted and collected from the employees' wages, and did not pay the corporations' share of the taxes owed to Social Security and Medicare.

        g.     <u>False Personal Tax Return.</u> For calendar year 2009, defendant MIGUEL filed a U.S. Individual Income Tax Returns (Form 1040), in which she

knowingly and willfully made material false statements, including the following:

        (i)     On Line 22 of the 2009 tax return, defendant MIGUEL substantially understated her total income. MIGUEL failed to report income totaling approximately $55,812, which resulted in MIGUEL's owing additional income taxes of approximately $9,851 for 2009.

        (ii)    On Line 7 of the 2009 tax return, defendant MIGUEL substantially understated the amount of wages that she received from the corporations in calendar year 2009, in that she failed to report approximately $26,915 of wages.

        (iii)   Defendant MIGUEL also failed to report approximately $28,897 of personal expenses that the corporations paid on her behalf.

     g.     Defendant MIGUEL caused the corporations to issue false W-2 tax forms to her, understating her salary, and omitting the personal expenses paid by the corporations.

     h.     Defendant MIGUEL provided false information to the tax preparers who prepared her personal tax return.

In violation of Title 26, United States Code, Section 7201.

*[signature]*
UNITED STATES ATTORNEY